

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---
### NO. PD-0199-17
---

**MELIK RALAH SMITH, Appellant**

**v.**

**THE STATE OF TEXAS**

---
### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIFTH COURT OF APPEALS DALLAS COUNTY
---

**WALKER, J., filed a dissenting opinion in which HERVEY, J., joined.**

### <u>DISSENTING OPINION</u>

Appellant Melik Ralah Smith was convicted of murder and sentenced to ninety-nine years imprisonment. At trial, he sought to have three doctors give testimony about his mental illness, which was excluded by the trial court. The court of appeals affirmed, holding that the trial court's exclusion was not an abuse of discretion. Appellant now seeks discretionary review with this Court. Because I would grant Appellant's petition for discretionary review, I respectfully dissent from the Court's decision today to refuse the petition.

**Background**

Appellant lived in an apartment together with his mother, Onkuli Morris, who is the decedent in this case. The night of Sunday, September 14, 2014, Dana Morris, who is Appellant's sister, telephoned Onkuli, but there was no answer. Dana called again the following day, September 15, but there was still no answer. On Tuesday, September 16, Dana called Jennifer Smith, a friend of Onkuli, and asked Jennifer to check on Onkuli. Jennifer was met by Appellant, who did not let her into the apartment. Appellant also told Jennifer that Onkuli was not at home. On the next morning, September 17, Dana called the police.

The responding officers knocked, to no response, and entered the apartment after finding that the front door was unlocked. Inside, they found blood splattered throughout the apartment, a wooden rod with blood and hair on it, and, in the master bedroom, Onkuli's body wrapped in a blanket. A crime scene detective later found Appellant hiding in a closet, and Appellant was arrested after refusing to come out of the closet.

At trial, Dana testified that Appellant had suffered from mental illness since the age of nineteen or twenty and was diagnosed with paranoid schizophrenia and bipolar disorder. Dana also testified that Appellant had been committed to mental hospitals multiple times. She added that when Appellant failed to take his medications, he would hear voices which he would speak to. He would also act out violently toward her and their mother, Onkuli. Regarding Onkuli's murder, Dana believed that Appellant was not on his medication at the time. However, Dana believed that Appellant did not intend to kill his mother.

The defense brought forth three doctors as expert witnesses to also testify about Appellant's mental illness. Outside the presence of the jury, the trial court heard testimony from the doctors but

ultimately decided to exclude them from testifying to the jury. The jury eventually convicted Appellant of murder, and he was sentenced to ninety-nine years imprisonment. On appeal, Appellant raised four issues claiming abuse of discretion by the trial court. The first three issues related to the trial court's exclusion of Appellant's mental illness evidence.[1] The fourth issue claimed error in failing to give a lesser-included offense instruction. The court of appeals held that there was no abuse of discretion and affirmed the conviction. Appellant now petitions this Court for discretionary review.

## The Court of Appeals's Opinion Below

Under the Code of Criminal Procedure, "[i]n all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing . . . together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." Tex. Code Crim. Proc. Ann. art. 38.36(a) (West 2005 & Supp. 2016). Expert testimony concerning mental illness may be relevant, reliable, and admissible to rebut proof of a defendant's *mens rea*. *Ruffin v. State*, 270 S.W.3d 586, 595 (Tex. Crim. App. 2008). However, that mental illness evidence may be excluded if it does not truly negate the required *mens rea* of the offense. *Ruffin*, 270 S.W.3d at 596.

The court of appeals found and held that the evidence Appellant sought to introduce through the doctors did not truly negate the *mens rea* of murder,[2] because none of the evidence established Appellant's mental state at the time of the offense. However, a plain reading of the court of appeals's

---

[1] Appellant's first point of error related to lay testimony, and the third point of error related to a video recording of Appellant's interrogation following arrest. Appellant's second point of error related to the expert witness testimony.

[2] Another reason to grant review of the court of appeals's decision is to determine what it means for mental illness evidence to "truly negate" the *mens rea* of an offense in order for it to be admissible.

opinion below reveals not only that two of the doctors provided evidence of Appellant's mental state at the time of the offense, but also that the court of appeals recognized it from the record. Specifically, the "FACTUAL BACKGROUND" section of the court of appeals's opinion states:

> Dr. Mitchell Dunn examined appellant on November 17, 2015, approximately fifteen months after Onkuli's death, and concluded appellant suffered from schizophrenia. Dunn testified *appellant was mentally ill at the time of the incident*, but he could not affirmatively state appellant was insane. He also stated a person who is mentally ill can differentiate between right and wrong. Dunn did not know whether, at the time of the offense, appellant intended to cause the death of his mother or did so knowingly or intentionally. The third witness, Dr. Antoinette McGarahan, evaluated appellant on December 11, 2015. She reviewed the police report and believed that appellant hiding in the closet after the incident showed *he was experiencing symptoms of mental illness and not functioning normally at the time of the offense.* After examining the interrogation video, she concluded that at the time of the interrogation, appellant was mentally ill, psychotic, experiencing delusions and hallucinations, and had lost touch with reality. McGarahan stated that although *appellant could have been insane at the time of the incident*, she was not providing testimony about whether he was inane or whether he intentionally or knowingly caused his mother's death.

*Smith v. State*, No. 05-16-00102-CR, 2017 WL 462349, at *2 (Tex. App.–Dallas, Feb. 1, 2017, mem. op., not designated for publication) (emphasis added).

Yet the court of appeals, in the "LAW & ANALYSIS" section of its opinion, seems oblivious to what it had just described in the "FACTUAL BACKGROUND" section. In the "LAW & ANALYSIS" section, the court of appeals's opinion reads:

> Appellant asserts he sought to admit the excluded evidence because it shows his state of mind at the time of the offense, which would have rebutted the required mental state for murder. The *mens rea* for murder is intentionally or knowingly. *See* TEX. PENAL CODE § 19.02(b). The excluded evidence shows appellant suffered from mental illness, was found incompetent to stand trial, and was admitted to Vernon State Hospital after his arrest. None of the excluded evidence established appellant's mental condition at the time of the murder. Appellant's experts could not state that appellant did not know right from wrong and did not knowingly or intentionally kill his mother. To the contrary, Dunn and McGarahan, who examined appellant more than one year after the murder, testified that a person who is mentally ill can

differentiate between right and wrong, can intend to perform an act, and is capable of understanding the results of his actions. Pittman, who examined appellant approximately one week after Onkuli's death, only testified about appellant's competency to stand trial. While the experts state appellant could have been insane at the time of the incident, they could not affirmatively testify that he was.

The trial court could have reasonably concluded that none of the excluded evidence was related to appellant's mental state at the time of the murder. Appellant did not raise an insanity defense, nor did the excluded evidence show he was insane. Further, all of the evidence reflected his mental state in the days, weeks, and months after the offense occurred and did not show appellant was unable to form the intent to intentionally or knowingly kill his mother at the time of her death. *See Palmer*, 2015 WL 6859783, at *3 (citing *Mays v. State*, 318 S.W.3d 368, 381-82 (Tex. Crim. App. 2010)). Because the excluded evidence does not negate the *mens rea* element of murder, we conclude the trial court did not abuse its discretion by excluding it. *See Ruffin*, 270 S.W.3d 596; *Jackson*, 160 S.W.3d at 572; *Palmer*, 2015 WL 6859783, at *3.

The trial court also could have excluded the evidence under evidentiary rule 403 having concluded the evidence was overly confusing or misleading to the jury. *See* TEX. R. EVID. 403. The excluded evidence was not tied to appellant's actions at the time of the offense and no testimony was offered to explain how evidence of appellant's mental illness in the days, weeks, or months after the murder reflected his ability to form the requisite intent at the time of the murder. Additional facts related to appellant's mental illness, but not related to his ability to form the requisite intent at the time of the murder, could confuse or mislead the jury. *See id.*; *Jackson*, 160 S.W.3d at 574.

*Smith*, 2017 WL 462349, at *3. The court of appeals's statement that "[n]one of the excluded evidence established appellant's mental condition at the time of the murder" is plainly not true. As the court of appeals itself recognized, "Dr. Mitchell Dunn testified appellant was mentally ill at the time of the incident."[3] *Smith*, 2017 WL 462349, at *2. The court of appeals also noted that "[t]he

---

[3] Outside the presence of the jury, Dunn testified:

Q. [By Defense Counsel] We'll go ahead and cut this a bit short.
But at the time that he caused his mother's death, do you think he was mentally ill at that time?
A. [By Dunn] Yes, I do.

Rep. R. vol. 4, 16.

third witness, Dr. Antoinette McGarahan . . . reviewed the police report and believed that appellant hiding in the closet after the incident showed he was experiencing symptoms of mental illness and not functioning normally at the time of the offense." *Id.* Additionally, the court of appeals said: "McGarahan stated that although appellant could have been insane at the time of the incident . . . ."[4] *Id.*

Nevertheless, the court of appeals explained, despite the testimony of both doctors, that "[t]he trial court could have reasonably concluded that none of the excluded evidence was related to appellant's mental state at the time of the murder. . . . all of the evidence reflected his mental state in the days, weeks, and months after the offense occurred . . . The excluded evidence was not tied to appellant's actions at the time of the offense." *Id.*

Further muddying the waters, the court of appeals states "[w]hile the experts state appellant could have been insane at the time of the incident, they could not affirmatively testify that he was." *Id.* On top of briefly recognizing that the witnesses did provide testimony about Appellant's mental state at the time of the offense, the court of appeals seems to require that the doctors must affirmatively testify that a defendant is insane before those same doctors can provide testimony about that defendant's mental illness. If so, the court of appeals appears to be circumventing rules that

---

[4] McGarahan testified:

Q. [By Defense Counsel] Did you see significance to the fact -- after reading the police report, of the fact that the defendant stayed around that apartment for three days and was hiding in a closet?
A. [By McGarahan] Yes. I think that was related to his mental illness. He clearly was still experiencing the symptoms of the mental illness at that time and was not functioning normally at the time of the offense.

Rep. R. vol. 4, 28.

Q. [By Defense Counsel] Could he have been insane at the very moment that it occurred?
A. He could have been. I'm not here to provide the testimony that he was or was not insane.

*Id.* at 29.

provide that doctors' testimony on mental illness is admissible, even if the defendant is not relying upon an insanity defense. *See* Tex. Code Crim. Proc. Ann. art. 38.36(a) (West 2005 & Supp. 2016) ("the defendant shall be permitted to offer testimony as to . . . all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense."); *see also Jackson v. State*, 160 S.W.3d 568, 574 (Tex. Crim. App. 2005) (recognizing diminished capacity as a failure-of-proof defense in which a defendant claims the State failed to prove that the defendant had the required mental state); *Ruffin*, 270 S.W.3d at 593-95 (reaffirming the availability of diminished capacity defense and the admissibility of mental illness evidence to rebut or disprove *mens rea*).

The court of appeals's own opinion is clearly contradictory. The evidence that was excluded did relate to Appellant's mental condition at the time of the offense. The court of appeals, in finding that the excluded evidence was not related to Appellant's mental state at the time of the murder, plainly ignored the doctors' testimony, which the court of appeals itself had recognized in the first part of its opinion. Both Dr. Dunn and Dr. McGarahan provided testimony about Appellant's mental condition at the time of the offense. Nevertheless, it appears that the court of appeals decided Appellant's case as if the doctors said no such thing. Accordingly, I believe the court of appeals's decision is at odds with itself and is so far a departure from the accepted and usual course of judicial proceedings as to call for an exercise of our power of supervision. Tex. R. App. P. 66.3(f). This Court should grant Appellant's petition for discretionary review. Because the Court chooses to refuse Appellant's petition, I respectfully dissent.


Filed: January 10, 2018
Publish